IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | | |
|---|---|---|
| KEVIN ALSTON, et al., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 1:22-cv-01061-ELH |
| | ) | |
| BALTIMORE GAS & ELECTRIC | ) | |
| COMPANY, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## PLAINTIFFS' MOTION FOR REMAND

Pursuant to 28 U.S.C. § 1447(c) and Local Rule 109.2, Plaintiffs Kevin Alston ("Mr. Alston"), Marcus Ragsdale ("Mr. Ragsdale"), Trillane Hill ("Mr. Hill"), Randall Carroll ("Mr. Carroll"), Malik Smith ("Mr. Smith"), Ajtiim Lee ("Mr. Lee"), and Quentin Pearson ("Mr. Pearson") (collectively, "Plaintiffs"), by their undersigned counsel, hereby submit this Motion requesting that the Court remand this case to the Circuit Court for Baltimore City, and in support thereof state as follows:

### I.      INTRODUCTION

This employment discrimination case involves a continuing campaign to cover up egregious acts of race discrimination as well as retaliation orchestrated or condoned by some of the top executives of the oldest and biggest gas and electric utility in Maryland.  Plaintiffs brought suit in the Circuit Court for Baltimore City against Baltimore Gas & Electric Company ("BGE"), BGE's parent company Exelon Corporation ("Exelon"), affiliated shared service company Exelon Business Services Company LLC ("BSC," and together with BGE and Exelon, the "Exelon Companies"), and thirty-six (36) current or former employees of the Exelon

1

Companies (the "Individual Defendants"[1]) alleging race discrimination and retaliation in violation of the Maryland Fair Employment Practices Act ("FEPA"), Md. Ann. Code, State Gov't §§ 20-601, *et seq*., and common law torts arising from BGE's companywide and systemic pattern and practice of turning a blind eye to blatant racial harassment and disparate treatment that created a hostile work environment for Black employees and retaliating against Black employees who opposed unlawful discrimination on account of their race. *See* Amended Complaint (ECF 4). In the Amended Complaint, Plaintiffs assert only state law causes of action arising under Maryland law. *See* Amended Complaint ¶¶ 612-683. Plaintiffs do not seek to enforce the collective bargaining agreement ("CBA") between the Exelon Companies and the union that represents BGE's utility workers, IBEW Local 410 (the "Union" or "Local 410), nor do Plaintiffs allege that Defendants violated any provisions of the CBA, assert any claims for any alleged violations of the CBA, or seek any damages for any alleged violations of the CBA. Plaintiffs have not sued Local 410 or alleged that the Union or any union officials breached any statutory duties owed to Plaintiffs or violated Plaintiffs' rights under any federal labor laws. Thus, on its face, Plaintiffs' Amended Complaint relies exclusively on state law and does not raise or depend on any issues of federal labor law. Nevertheless, Defendants removed the case from state court contending that this Court has original jurisdiction over the action because the Amended Complaint "arises in part under" § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), and implicates § 9(a) of the National Labor Relations Act (the "NLRA"), 29 U.S.C. § 159(a). *See* Notice of Removal (ECF 1) ¶¶ 11-16, 17-20.

---

[1]    Individual Defendants Chris T. Kasecamp ("Kasecamp"), Joseph M. Belge ("Belge"), and Eric Gomez ("Gomez") have not been served. For purposes of this Motion, "Defendants" refers to the Exelon Companies and the Individual Defendants who have already been served.

Defendants' contention that Plaintiffs' state law claims "arise in part under" § 301 of the LMRA because "[n]umerous paragraphs in the Amended Complaint make allegations that require interpretation of the CBA, seek to enforce the CBA, allege violations of the CBA, or otherwise depend on the CBA" and implicate § 9(a) of the NLRA because certain paragraphs purportedly "raise duty of fair representation claims" (*id.* ¶¶ 16, 20) has no basis in fact or law. Under bedrock principles of federal jurisdiction, this case arises solely under the state law causes of action set forth in the Amended Complaint. Plaintiffs' claims are brought only under Maryland statutory and common law and the resolution of those claims does not require or depend on an interpretation of any provision of the CBA. The arguments set forth in Defendants' Notice of Removal were cut and pasted almost verbatim from a notice the Exelon Companies filed when they removed a prior case to federal court except that, unlike the earlier notice which specifically explained the basis for seeking removal, the Notice of Removal here conspicuously lacks any meaningful explanation of the specific grounds for removing the case from state court. However, even a cursory examination of the paragraphs Defendants cited as proof that Plaintiffs' state law claims arise under or implicate federal labor laws shows that none of the paragraphs identified by Defendants make any allegations that require interpretation of or depend on the CBA or raise duty of fair representation claims. Moreover, the very authorities Defendants rely upon in the Notice of Removal irrefutably establish that there was and is no basis for removal in this case since it has long been settled that state law discrimination and retaliation claims that primarily concern the conduct of the employee and the conduct and motivation of the employer do not require or depend on an interpretation of the CBA.

Simply put, there is no federal subject matter jurisdiction over this action, the case could not have been brought originally in federal court, and it should not and cannot properly be

removed to this Court now. Accordingly, the case should be remanded to state court due to a lack of subject matter jurisdiction. Furthermore, because it is obvious from the face of the Amended Complaint that Defendants had no objectively reasonable basis for seeking removal, and particularly in view of the evidence suggesting that Defendants improperly removed the action to federal court to delay the resolution of the case in state court, Defendants should be required to pay Plaintiffs' reasonable hourly attorneys' fees incurred as a result of the removal.

## II.    RELEVANT PROCEDURAL HISTORY

1.    Mr. Alston filed the original Complaint against the Exelon Companies in the Circuit Court for Baltimore City alleging race discrimination and retaliation in violation of FEPA on June 4, 2021. *See* Complaint (ECF 2).

2.    On April 8, 2022, Mr. Alston filed the Amended Complaint, which, among other things, added Mr. Ragsdale, Mr. Hill, Mr. Carroll, Mr. Smith, Mr. Lee, and Mr. Pearson as plaintiffs and named thirty-six (36) current or former employees of the Exelon Companies who directly participated in or knowingly aided and abetted BGE's discriminatory and retaliatory employment practices as defendants. *See* Amended Complaint (ECF 4). The Amended Complaint consists of eight counts. Counts I, II, and III assert FEPA claims for racial harassment, race discrimination, and retaliation on behalf of all Plaintiffs against all Defendants. *Id.* ¶¶ 612-31. As to all three counts, the Individual Defendants are named as defendants only for purposes of Plaintiffs' requests for declaratory and injunctive relief. *Id.* p. 170 fn. 50, p. 173 fn. 51, p. 174 fn. 52. Counts IV and V assert a FEPA discrimination claim and a common law tortious interference claim on behalf of six Plaintiffs and two putative classes of Black/African American former BGE employees who were prohibited from working for contractors that do business with the Exelon Companies upon separating from employment with BGE pursuant to

4

Exelon's Use of Contractors Policy. *Id.* ¶¶ 632-62. These two counts are brought against the Exelon Companies and three (3) senior executives of the Exelon Companies who were directly responsible for administering the Use of Contractors Policy. *Id.* ¶¶ 101-106. Count VI asserts an intentional infliction of emotional distress claim on behalf of Mr. Lee. *Id.* ¶¶ 663-69. This count is brought against the Exelon Companies and eleven (11) current or former employees of the Exelon Companies who were in a position of power over Mr. Lee, held roles of heightened responsibility to him and/or within the Exelon Companies, and/or personally reassured him that they would address his complaints of discrimination and/or retaliation and abused their positions of authority by, among other things, intentionally discriminating against him and/or retaliating against him merely for exercising his statutorily protected right to oppose unlawful discrimination; ignoring or failing to take appropriate and sufficient corrective actions in response to his complaints; deliberately making false and defamatory statements regarding his job performance and the reason he was discharged; terminating his employment based on false and pretextual reasons; improperly disclosing his confidential personnel information; and/or persistently making false and defamatory statements accusing him of staging or fabricating a noose-tying incident, insinuating that he was not subjected to a noose-tying, and/or maintaining that BGE's 2018 investigation did not substantiate his allegations. *Id.* ¶¶ 664-665. Counts VII and VIII assert defamation and invasion of privacy claims on behalf of Mr. Carroll. *Id.* ¶¶ 670-83. This count is brought against the Exelon Companies and Mr. Carroll's former supervisor.

3.     Within days of Plaintiffs' filing the Amended Complaint, Plaintiffs discovered that the Exelon Companies published and made oral statements, both internally and to third parties, falsely claiming or implying that Plaintiffs were fired for engaging in unsafe, dishonest and potentially criminal activities. For instance, on April 12, 2022, Plaintiffs learned that BGE

President and Chief Executive Officer Carim Khouzami ("Khouzami") sent all BGE employees an email about Plaintiffs' lawsuit. *See* Exhibit 2, Emails From T. Baña to J. Cuttino dated April 12-13, 2022, at p. 1.[2] Khouzami's email falsely stated, or at a minimum strongly insinuated, that BGE discharged Plaintiffs because they posed a threat to the "physical and emotional" safety of others. *Id.* The same day, Plaintiffs' counsel sent defense counsel an email requesting that the Exelon Companies immediately cease and desist from making any further false and defamatory statements about Plaintiffs and that they direct Khouzami to send all BGE employees an email retracting or correcting his prior email. *Id.* That email advised that Plaintiffs were prepared to seek emergency relief from the Circuit Court of Baltimore City if they were subject to any further defamatory and retaliatory statements by the Exelon Companies' representatives. *Id.* Defense counsel did not respond.

4.      On April 13, 2022, Plaintiffs discovered that BGE made similar defamatory statements about Plaintiffs to one or more reporters from The Baltimore Sun.[3] *Id.* The same day, Plaintiffs' counsel sent defense counsel a second email requesting that the Exelon Companies retract or correct their false and defamatory statements regarding Plaintiffs and

---

[2]      Undersigned counsel has submitted a supporting declaration attesting to the accuracy of all of the exhibits cited in this Motion. *See* Exhibit 1, Declaration of T. Baña.

[3]      The article published online at www.baltimoresun.com on April 13, 2022 is available at https://www.baltimoresun.com/business/bs-bz-bge-exelon-racial-discrimination-lawsuit-20220413-fdaqmwsr7fb2lgsiuo7szp42ce-story.html. The Baltimore Sun published multiple articles about the lawsuit online and published at least one article about it in the newspaper's print version. All of the articles included BGE's false and defamatory representation that Plaintiffs were discharged for conduct or safety violations, such as "failing to follow drug and alcohol policies, falsification of time records and using company time for personal or monetary gain." Further, BGE's false statement quoted and reported in the articles published by The Baltimore Sun was subsequently included in numerous articles published online by other news outlets. For example, the article published on The Baltimore Sun website on April 13, 2022 was republished the same day on the Yahoo Finance website at https://finance.yahoo.com/news/lawsuit-accuses-bge-culture-racial-220300587.html.

reiterating that Plaintiffs were prepared to seek emergency relief from the court. *Id.* Defense counsel did not respond.

5. On April 18, 2022, counsel for the parties had a conference call to discuss a number of issues relating to the case. *See* Exhibit 3, Emails Between D. Baña and J. Cuttino on April 18, 2022. During that call, counsel for the parties agreed that Defendants' response to the Amended Complaint would be due sixty (60) days after service and that any response filed by Plaintiffs would be due thirty (30) days thereafter. *Id.*

6. On April 21 and 22, 2022, Plaintiffs' counsel emailed defense counsel courtesy copies of two additional charges of discrimination that were filed on behalf of former BGE employees Michael A. Greene ("Mr. Greene") and Jaime Acevedo ("Mr. Acevedo"). *See* Exhibit 4, Email From D. Baña to J. Cuttino on April 21, 2022, and Exhibit 5, Email From D. Baña to J. Cuttino on April 22, 2022. The emails revealed that Mr. Greene and Mr. Acevedo contemporaneously requested that the EEOC immediately issue them a Notice of Right to Sue so that the two men could join the pending lawsuit. *Id.* In addition, Plaintiffs' counsel sought a response to Plaintiffs' request that the Exelon Companies direct Khouzami to send all BGE employees an email retracting or correcting the false and defamatory statements made in the email Khouzami sent to all employees on April 11, 2022 and that defense counsel provide written confirmation when he had done so. *See* Ex. 4 p. 1.

7. Beginning on April 26, 2022, Plaintiffs' counsel sent defense counsel multiple emails requesting their availability over the next several days to participate in a hearing on Plaintiffs' forthcoming motion for emergency injunctive relief.[4] *See* Exhibit 6, Emails Between

---

[4] On or about April 25, 2022, defense counsel notified Plaintiffs' counsel that Shawe Rosenthal LLP had replaced Morgan, Lewis & Bockius LLP as defense counsel and would soon

T. Baña and L. White dated April 26-27, 2022. Plaintiffs' counsel requested defense counsel's availability as a professional courtesy and to ensure that any hearing on the emergency motion would be scheduled on a date that was mutually convenient for both sides. *Id.* p. 1. Defense counsel asked when Plaintiffs' counsel intended to file the motion but otherwise disregarded multiple requests for their availability to attend a hearing. *Id.*

8. On April 28, 2022, Plaintiffs' counsel advised defense counsel that Plaintiffs anticipated filing a motion for a TRO/preliminary injunction within the next two (2) to three (3) business days. *See* Exhibit 7, Emails Between T. Baña and L. White dated April 27-28, 2022.

9. On April 29, 2022, Defendants filed a Joint Stipulation to Extend Time to Respond to Amended Complaint memorializing the parties' agreement to extend the time for Defendants to respond to the Amended Complaint and for Plaintiffs to file their opposition in the event that Defendants filed a responsive pleading other than an Answer. *See* ECF 6-2.

10. The same day, Defendants filed the Notice of Removal contending that the Amended Complaint "arises in part under" § 301 of the LMRA because twelve (12) paragraphs purportedly "make allegations that require interpretation of the CBA, seek to enforce the CBA, allege violations of the CBA, or otherwise depend on the CBA" and implicates § 9(a) of the NLRA because seventeen (17) paragraphs supposedly "raise duty of fair representation claims." *See* Notice of Removal ¶¶ 16, 20.[5]

11. Less than an hour after receiving notification of the removal through the ECF system, Plaintiffs' counsel sent defense counsel an email pointing out that there was no factual or legal basis for removal and asserting that Defendants' removal of the case was merely "another

_____

be entering its appearance on behalf of the Exelon Companies and most of the individual defendants.

[5] Highlighted copies of the current Notice of Removal and the prior notice showing the areas of overlap are attached as Exhibits 10 and 11.

in a series of dilatory tactics designed to needlessly prolong and multiply these proceedings." *See* Exhibit 8, Emails From T. Baña to L. White dated April 29, 2022. The email requested that the Exelon Companies voluntarily notify the Court that removal had been improvidently sought and that defense counsel confirm whether or not Defendants would do so by close of business on May 2, 2022. *Id.* p. 1. That email also advised that Plaintiffs would seek an award of their attorneys' fees if they were forced to move for remand. *Id.* In a subsequent email, Plaintiffs' counsel inquired which, if any, particular lawyers at the Exelon Companies had authorized the filing. Defense counsel did not respond.

12.     On May 2, 2022, defense counsel sent Plaintiffs' counsel an email requesting Plaintiffs' position on Defendants' forthcoming motion seeking this Court's approval of the extended deadlines reflected in the Joint Stipulation to Extend Time to Respond to Amended Complaint the parties filed in state court. *See* Exhibit 9, Emails Between E. Hemmendinger and T. Baña dated May 5, 2022. In response, Plaintiffs' counsel informed defense counsel that Plaintiffs would "not voluntarily consent to any requests or proposals made by Defendants/defense counsel in this forum" because, "[g]iven the lack of any colorable factual or legal basis for removal, Defendants' history of dilatory tactics, and [defense counsel's] express assertion that they "anticipated that the litigation would be a 'long haul,'" it seemed "obvious that Defendants removed the action to federal court solely to delay the resolution of the case." *Id.* p. 3. Plaintiffs' counsel noted that Shawe Rosenthal has "a long history and extensive experience litigating labor relations issues" and asserted that the firm's senior partners must know "that removing this case to federal court was an abuse of process and improper under settled labor law." *Id.* p. 1. Plaintiffs' counsel also identified substantial authority demonstrating that Defendants' removal of the action was contrary to well-established precedents holding that

state law discrimination and retaliation claims do not require an interpretation of the CBA and provided an extensive analysis showing that none of the paragraphs Defendants cited as evidence that Plaintiffs' state law claims arise under or implicate federal labor laws make any allegations that require interpretation of or depend on the CBA or that raise duty of fair representation claims. *Id.* pp. 1-2. Plaintiffs' counsel again warned that Plaintiffs would seek recovery of their attorneys' fees in the event that Defendants failed to voluntarily withdraw the notice of removal. Defense counsel did not respond. *Id.* p. 1.

13.     On June 11, 2022, Defendants filed a motion to dismiss. *See* Defendants' Partial Motion to Dismiss Plaintiffs' Amended Complaint (ECF 16). Defendants' motion raises at least twenty-three (23) discrete statutory, common law, procedural, or jurisdictional grounds that supposedly warrant dismissal of several of Plaintiffs' claims in their entirety, dismissal of other specific claims or allegations as to certain Plaintiffs, and dismissal of other claims as to some or all of the Individual Defendants, but does not raise a single defense that is predicated on federal labor law.

## III.     ARGUMENT

### A.     Standard of Review

Federal courts are courts of limited jurisdiction and "may not exercise jurisdiction absent a statutory basis." *Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 552 (2005). Of import here, courts have "an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010). *See also Sucampo Pharmaceuticals, Inc. v. Astellas Pharma, Inc.,* 471 F.3d 544, 548 (4th Cir. 2006). With regard to removed cases, 28 U.S.C. § 1447(c) requires: "If at any time before

final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."

Defendants contend that the Court possesses subject matter jurisdiction based on federal question jurisdiction, also known as "arising under" jurisdiction. *See* 28 U.S.C. §§ 1331 & 1441(a)-(b). Section 1331 grants federal district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." In turn, § 1441, the general removal statute, permits "any civil action brought in a State court of which the district courts of the United States have original jurisdiction" to be "removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). When jurisdiction is based on a claim "arising under the Constitution, treaties or laws of the United States," the case is "removable without regard to the citizenship or residence of the parties." *Id.* § 1441(b).

The "presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Rivet v. Regions Bank of La.,* 522 U.S. 470, 475 (1998) (citation omitted). In the event that a defendant contends that a plaintiff's state claims arise under federal law, the defendant may assert "federal" or "ordinary" preemption "as a defense to the allegations in a plaintiff's complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). But, it is "settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Id.* at 393. Put another way, the "existence of a federal defense normally does not create statutory 'arising under' jurisdiction, and 'a defendant

may not [generally] remove a case to federal court unless the *plaintiff's* complaint establishes that the case 'arises under' federal law." *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 207 (2004) (alteration and emphasis in original) (internal citations omitted).

Complete preemption which creates federal removal jurisdiction is distinct from the defense of federal preemption. As the Supreme Court has explained: "When [a] federal statute completely pre-empts [a] state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Beneficial Nat'l Bank v. Anderson,* 539 U.S. 1, 8 (2003). Therefore, federal question jurisdiction is satisfied "when a federal statute wholly displaces the state-law cause of action through complete pre-emption." *Id. See also Vaden v. Discover Bank*, 556 U.S. 49, 61 (2009); *Davila,* 542 U.S. at 207-08.

To remove an action on the basis of complete preemption, a removing defendant must show not only that the "state law claim is cognizable as a federal claim, but also that Congress clearly intended the federal claim to 'provide the *exclusive* cause of action' for claims of overwhelming national interest." *Barbour v. Intern. Union*, 640 F.3d 599, 631 (4th Cir. 2011) (en banc) (emphasis in original) (citation and quotation marks omitted), *abrogated on other grounds* by 28 U.S.C. § 1446(b)(2)(B). Complete preemption is a jurisdictional doctrine that " 'converts an ordinary state common law complaint into one stating a federal claim,' and the federal claim is deemed to appear on the face of the complaint." *Pinney v. Nokia, Inc.,* 402 F.3d 430, 449 (4th Cir. 2005) (citation omitted). By contrast, the defense of federal preemption "does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court." *Id.* (citation omitted).

**B.**     **Plaintiffs' State Law Claims Are Not Completely Preempted By Section 301 Of The LMRA Because Their Claims Do Not Require Or Depend On An Interpretation Of A CBA**

Defendants principally contend that this Court has subject matter jurisdiction and that the action is removable to federal court because Plaintiffs' state law claims are completely preempted by § 301 of the LMRA. *See* Notice of Removal ¶¶ 11-16. Section 301 of the LMRA, 29 U.S.C. § 185(a), provides:

> Suits for violation of contracts between employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

Suits alleging violations of a provision of a labor contract must be brought under § 301 and must be resolved by reference to federal law. *Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 103-104 (1962). The "pre-emptive force of § 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization." *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.,* 463 U.S. 1, 23 (1983) (internal quotation marks and citation omitted). Section 301 "governs claims founded directly on rights created by collective-bargaining agreements, and also claims substantially dependent on analysis of a collective-bargaining agreement." *Caterpillar Inc. v. Williams,* 482 U.S. 386, 394 (1987) (internal quotation marks and citation omitted). A state law claim is completely preempted by § 301 only if the resolution of the claim "requires the interpretation of a collective bargaining agreement," *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 413 (1988), or is "inextricably intertwined with consideration of the terms of the labor contract." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985). However, § 301 "cannot be read broadly to preempt nonnegotiable

rights conferred on individual employees as a matter of state law." *Livadas v. Bradshaw,* 512 U.S. 107, 123 (1994). It is "the legal character of a claim, as independent of rights under the collective bargaining agreement," and "not whether a grievance arising from precisely the same set of facts could be pursued" that determines "whether a state cause of action may go forward." *Id.* at 123-124. Further, "the bare fact that a collective bargaining agreement will be consulted in the course of state law litigation plainly does not require the claim to be extinguished." *Id.* at 124.

As noted above, Plaintiffs' Amended Complaint asserts only statutory claims alleging discrimination and retaliation in violation of FEPA and common law torts alleging tortious interference with economic relations, intentional infliction of emotional distress, defamation and invasion of privacy. *See* Amended Complaint ¶¶ 612-683. Both the Supreme Court and the Fourth Circuit have held that state law discrimination and retaliation claims and other state law claims that involve "purely factual questions" concerning "the conduct of the employee and the conduct and motivation of the employer" are not preempted by § 301 because they do not require or depend on an interpretation of a CBA. *See, e.g., Lingle, supra,* 486 U.S. at 407 (finding § 301 did not preempt state tort claim alleging retaliatory discharge for filing worker's compensation claim); *Owen v. Carpenters' Dist. Council,* 161 F.3d 767, 776-77 (4th Cir. 1998) (finding § 301 did not preempt state tort claim alleging sexual harassment and retaliatory discharge); *Martin Marietta Corp. v. Maryland Commission on Human Relations,* 38 F.3d 1392, 1402 (4th Cir. 1994) (finding § 301 did not preempt state law claims alleging handicap discrimination and retaliation); *Jackson v. Kimel,* 992 F.2d 1318, 1325-27 (4th Cir. 1993) (finding § 301 did not preempt state tort claim alleging intentional infliction of emotional distress). *See also Smith v. Giant Food, LLC,* 931 F.Supp.2d 717, 721 (D. Md. 2013) (finding § 301 did not preempt state

tort claims alleging false imprisonment and intentional infliction of emotional distress); *Taylor v. Giant Food, Inc.,* 2004 WL 2191715, at *2 (D. Md. Sept. 13, 2004) (finding § 301 did not preempt state law claims alleging race and sex discrimination and retaliatory discharge); *Jenkins v. PBG, Inc.,* 268 F.Supp.2d 593, 596-98 (D. Md. 2003) (finding § 301 did not preempt state tort claim alleging intentional misrepresentation); *Miller v. Fairchild, Inc.,* 668 F.Supp. 461 (D. Md. 1987) (same). In short, it is well-settled that state law claims such as Plaintiffs' claims are not completely preempted by § 301.

Defendants' argument that Plaintiffs' state law claims are completely preempted by § 301 is based entirely on their bald contention that "paragraphs 43, 53, 86, 160, 235, 236, 238, 378, 393, 394, 396, and 404" of the Amended Complaint "make allegations that require interpretation of the CBA, seek to enforce the CBA, allege violations of the CBA, or otherwise depend on the CBA." *See* Notice of Removal ¶ 16. However, the handful of paragraphs Defendants identified (just 12 out of 683 paragraphs in the Amended Complaint) actually allege:

- That supervisor Robert Lee "aided and abetted Defendants' campaign to conceal and/or cover up their discriminatory practices and to discredit the victims by knowingly making false and defamatory statements about Mr. Ragsdale during the grievance process [and] giving false testimony at an arbitration hearing," Amended Complaint ¶ 43;
- That BGE employee and union steward Chris Kasecamp "aid[ed] and abet[ted] or act[ed] in concert with supervisor Mark Powers "to wrongfully discharge Randall Carroll" and "deliberately failed to timely file a grievance related to Mr. Carroll's discharge" because of Mr. Carroll's race and/or protected activity, *id.* ¶ 53;
- That former BGE crew leader and union business manager Eric Gomez abandoned Kevin Alston's grievance and improperly disclosed Ajtiim Lee's confidential personnel information because of their race and/or protected activity, *id.* ¶ 86;
- That the union has a pattern of failing to timely file or failing to pursue meritorious grievances on behalf of Black employees and that Black employees' grievances have been disproportionately abandoned, *id.* ¶ 160;
- That while the union "initially led Mr. Alston to believe that BGE and Local 410 had bargained in good faith over his discharge," he subsequently learned that Local 410 "agreed to abandon his ICP complaint" without following "any of the steps outlined in the ICP Agreement" and he "discovered that Local 410 has a pattern of failing to pursue meritorious grievances on behalf of Black employees" and that "the Union's only Black

steward resigned from that position in protest of Local 410's racially discriminatory practices." *Id.* ¶¶ 235-236, 238;

- That BGE's policy prohibiting employees who have a written reprimand or suspension within the last twelve months from posting for other positions is contained in the CBA, *id.* ¶ 378;

- That Kasecamp and Powers "met with employees [] regarding the attendance requirements of the CBA," *id.* ¶ 393;

- That "neither BGE's Employee Handbook nor the CBA contains any provisions requiring 24 hours' notice prior to taking unscheduled sick leave or vacation leave," that "the CBA expressly states that vacation may be requested at any time prior to the start of an employee's shift," and that, although "both the CBA and the Employee Handbook state that employees must notify their supervisor [] of any absences at least one hour before their scheduled start time," Powers "did not require employees [] to adhere to that procedure," *id.* ¶ 394;

- That Mr. Carroll "was never coached or counseled let alone threatened with discharge for non-compliance with the notification procedure in the Employee Handbook/CBA," *id.* ¶ 396; and

- That BGE considers Mr. Carroll's grievance untimely. *Id.* ¶ 404.

Most of those paragraphs, *i.e.* ¶¶ 43, 53, 86, 160, 235-236, and 238, simply allege that the Individual Defendants treated Plaintiffs differently and less favorably because of their race and/or their protected activity, which involves precisely the type of "purely factual questions" pertaining to "the conduct and motivation of the employer" that do not require or depend on an interpretation of the CBA and are not a basis for complete preemption under § 301. *See Lingle, supra,* 486 U.S. at 407; *Owen, supra,* 161 F.3d at 776-77. The remaining paragraphs merely refer to policies contained in the CBA, *i.e.* ¶¶ 378, 394, or mention the words "CBA" or "grievance," *i.e.* ¶¶ 393, 396, and 404, which obviously is not a basis for preemption since "the bare fact" that "the CBA may be referred to or consulted during the course of the resolution of [Plaintiffs' claims] does not militate in favor of finding § 301 preemption." *Livadas,* 512 U.S. at 124; *Owens,* 161 F.3d at 775. *See also Lingle,* 486 U.S. at 413, fn. 12 ("A collective bargaining agreement may, of course, contain information such as rate of pay . . . that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled"). Accordingly, Plaintiffs' state law claims are not "completely preempted" by § 301 of the LMRA

such that they are "in reality based on federal law," *Beneficial, supra,* 539 U.S. at 8, and this action is not one "arising under" federal law for removal purposes and the Court lacks subject matter jurisdiction over the case.  28 U.S.C. § 1331.

### C. Plaintiffs' State Law Claims Are Not Completely Preempted By Section 9(a) Of The NLRA Because Plaintiffs Do Not Allege A Breach Of The Duty Of Fair Representation

As noted above, Defendants also implied that Plaintiffs' state law claims are completely preempted by § 9(a) of the NLRA because "paragraphs 53, 86, 160, 235, 236, 238, 393, 394, 396, 399, 400, 401, 402, 403, 404, 554, and 555" purportedly "raise duty of fair representation claims."  *See* Notice of Removal ¶ 20.  The only authority Defendants cited in support of their assertion that complete preemption applies and is a proper basis for the removal of state law claims implicating the duty of fair representation is *Taylor v. Giant Food, Inc.,* 438 F. Supp. 2d 576, 583 (D. Md. 2006).

Preliminarily, neither the Supreme Court nor the Fourth Circuit has ever held that state law claims implicating the duty of fair representation are completely preempted by § 9(a) and there is persuasive authority to the contrary.  Specifically, in *Barbour v. International Union,* 594 F.3d 315 (4th Cir. 2010), the Fourth Circuit held that the complete preemption doctrine did not apply and was not a proper basis for the removal of state law claims for negligent misrepresentation and other related state law claims alleging that the union breached its fiduciary duties to members by providing false information concerning their eligibility for retirement packages.  *Id.* at 333.[6]  The *Barbour* panel expressly rejected the union's argument that the

---

[6]     The cited opinion was subject to rehearing *en banc* and the subsequent *en banc* opinion was based on the finding that removal had been untimely and did not reach the complete preemption issue, but the *en banc* concurrence would have upheld the *Barbour* panel's decision. *Barbour v. Intern. Union*, 640 F.3d 599 (4th Cir. 2011) (en banc). The *Barbour* decision directly calls into question the reasoning in *BIW Deceived v. Local S6, Indus. Union of Marine &*

members' state law causes of action were completely preempted by Section 9(a), explaining that, for complete preemption to apply, a removing defendant must show not only that the state law claim "is cognizable as a federal claim, but that the Congress clearly intended the federal claim to provide the exclusive cause of action for claims of overwhelming national interest." *Id.* at 329 (internal quotation marks and citation omitted). The *Barbour* panel noted that the union had directed it "to no statutory language in § 9(a) of the NLRA, nor to any legislative history, showing a clear intent by the Congress that all state law claims relating to all fiduciary duties owed to union members by virtue of their union membership are exclusively federal claims under § 9(a)," observed that, "[o]n its face, § 9(a) simply does not reveal an intent to always foreclose state law claims for breach of fiduciary duty arising solely on the basis of union membership," and found that "[n]o such congressional imperative exists with respect to § 9(a) of the NLRA because the duty of fair representation is, itself, judicially created." *Id.* at 329-30 (internal quotation marks and citation omitted). The initial panel decision and the *en banc* concurrence in *Barbour* constitute persuasive authority that § 9(a) does not completely preempt state law claims implicating the duty of fair representation.

Furthermore, even if the holding of the initial *Barbour* decision turned entirely on the fact that the plaintiffs brought claims "solely on the basis of union membership" and had not "specifically pled breach of the duty of fair representation," *Barbour,* 594 F.3d at 328-330, the same analysis applies here since Plaintiffs have not asserted any state law causes of action alleging that the union or any union official breached the duty of fair representation. Defendants' reliance on *Taylor* is misplaced for the same reason. In *Taylor,* the plaintiff brought

---

*Shipbuilding Workers of Am.,* 132 F.3d 824 (1st Cir. 1997) and *Richardson v. United Steelworkers of America,* 864 F.2d 1162 (5th Cir. 1989), the two cases most often cited for the proposition that complete preemption applies and is a proper basis for removing state law claims that implicate the duty of fair representation.

claims against the union and a union steward and specifically pled a "breach of contract claim" based on express allegations that the defendants took actions in "breach of the duty of fair representation," which clearly embraced § 9(a) of the NLRA. 483 F.Supp.2d at 585. Here, Plaintiffs have not brought any claims against the Union and they do not assert any claims against any union officials based on allegations that the individuals breached the duty of fair representation or any other statutory or common law duties owed to Plaintiffs.

Defendants' argument that Plaintiffs' state law claims are completely preempted by § 9(a) is based entirely on their bald contention that paragraphs 53, 86, 160, 235, 236, 238, 393, 394, 396, 399, 400, 401, 402, 403, 404, 554, and 555 "raise duty of fair representation claims." *See* Notice of Removal ¶ 20. However, none of those paragraphs allege that the Union or any union official breached the duty of fair representation. As demonstrated above, paragraphs 43, 53, 86, 160, 235-236, and 238 allege that the Individual Defendants treated Plaintiffs differently and less favorably because of their race and/or their protected activity, paragraphs 378 and 394 refer to policies contained in the CBA, and paragraphs 393, 396, and 404 mention the words "CBA" or "grievance." Paragraphs 399-403 only allege that Kasecamp told Mr. Carroll that the Union timely filed a grievance on his behalf related to his discharge and that Mr. Carroll subsequently discovered that the Union did not file a grievance related to his discharge until three months later. Such allegations do not raise duty of fair representation claims because Plaintiffs do not allege that Kasecamp's failure to timely file a grievance on Mr. Carroll's behalf constituted a breach of the duty of fair representation. In addition, insofar as it is undisputed that Kasecamp filed the grievance three months later than he represented, the only issue to be resolved by a jury is whether Kasecamp's handling of the grievance (and other actions unrelated to the grievance process) were motivated by Mr. Carroll's race and/or his protected activity.

Likewise, paragraphs 554 and 555 only allege that Mr. Lee notified the Union that he wanted to file a grievance challenging his discharge and that, to date, he has heard nothing from the Union regarding his grievance. Again, such allegations do not raise duty of fair representation claims because Plaintiffs do not allege that Local 410's failure to communicate with Mr. Lee constitutes a breach of the duty of fair representation by the Union or any union official. Moreover, neither of those allegations is a basis for any of Mr. Lee's state law causes of action. Accordingly, Plaintiffs' state law claims are not completely preempted by § 9(a) of the NLRA.

### D. Defendants Should Be Required To Pay Plaintiffs' Reasonable Hourly Attorneys' Fees Incurred As A Result Of The Removal

Finally, the Court should award Plaintiffs their reasonable hourly attorneys' fees and costs pursuant to 28 U.S.C. § 1447(c), which provides: "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." The Supreme Court has suggested that attorney's fees are properly awarded when the removing party lacks an "objectively reasonable basis for removal." *Martin v. Franklin Capital Corp.,* 546 U.S. 132, 136 (2005). Here, there clearly was and is no objectively reasonable basis for removal since there is no federal claim on the face of the Amended Complaint and Defendants' removal of the case from state court was contrary to settled law. When the Amended Complaint is accurately portrayed, none of the allegations Defendants' identified in the Amended Complaint require or depend on the interpretation of the CBA or raise duty of fair representation claims. Moreover, in view of the fact that Defendants removed the action to federal court less than forty-eight (48) hours after Plaintiffs' counsel disclosed that Plaintiffs planned to file a motion for a temporary restraining order, it is not unreasonable to infer that Defendants removed the case solely to delay the resolution of the case in state court. Such defense tactics needlessly and unfairly multiply the burden and expense of litigation.

Accordingly, the Exelon Companies should be required to pay Plaintiffs' reasonable hourly attorneys' fees as a result of the removal.[7]

## IV.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court remand this case to the Circuit Court for Baltimore, Maryland and deny the pending motion to dismiss on grounds of mootness.

Dated: July 11, 2022                    Respectfully submitted,


                                        /s/ Tonya Baña
                                        Tonya Baña (Fed. Bar No. 27326)
                                        Tonya Bana LLC
                                        4305 Saint Paul Street
                                        Pikesville, MD  21218
                                        Tel.: (443) 890-8000
                                        Fax: (410) 670-7573
                                        E-mail: tonya@tonyabana.com

                                        *Attorney for Plaintiffs*

---

[7] In accordance with the Local Rules, Plaintiffs' counsel will file the memorandum required by Local Rule 109.2.b within fourteen (14) days of the entry of the Court's Order granting Plaintiffs' Motion for Remand.

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of July 2022, a copy of Plaintiffs' Motion for Remand was electronically filed through the Court's CM/ECF System, which will send a notification of such filing to all counsel of record.

   /s/ Tonya Baña   
Tonya Baña
